Richard A. Williamson, Esq. (RW-3033)
FLEMMING ZULACK WILLIAMSON ZAUDERER LLP
Attorneys for WTCP Cross-Claim Plaintiffs
One Liberty Plaza
New York, New York 10006
(212) 412-9500

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X
                                                        :        21 MC 97 (AKH)
IN RE SEPTEMBER 11 LITIGATION                           :
                                                        :
---------------------------------------------------------X
                                                        :
THIS DOCUMENT APPLIES TO ALL CASES                      :
                                                        :
---------------------------------------------------------X

## DECLARATION OF RICHARD A. WILLIAMSON IN OPPOSITION TO DEFENDANTS USAIRWAYS, INC.'S, US AIRWAYS GROUP, INC.'S, COLGAN AIR, INC.'S AND CONTINENTAL AIRLINES, INC.'S RESPECTIVE MOTIONS FOR SUMMARY JUDGMENT WITH RESPECT TO WTCP CROSS-CLAIM PLAINTIFF'S FLIGHT 175 CLAIMS AGAINST THEM AND PURSUANT TO FED. R. CIV. PRO. 56(f)

RICHARD A. WILLIAMSON, pursuant to 28 U.S.C. § 1746, declares under the penalties of perjury under the laws of the United States that the following is true and correct:

1.      I am a member of the Bar of this Court and of the law firm of Flemming Zulack Williamson Zauderer LLP, attorneys for Cross-Claim Plaintiffs World Trade Center Properties LLC, 1 World Trade Center LLC, 2 World Trade Center LLC, 4 World Trade Center LLC, 5 World Trade Center LLC, and 7 World Trade Company, L.P. (the "WTCP Cross-Claim Plaintiffs") in the above-captioned litigation. I submit this declaration in opposition to US Airways, Inc., US Airways Group, Inc.'s (together "US Airways"), Colgan Air, Inc.'s ("Colgan"), and Continental Airlines, Inc.'s ("Continental") respective motions for summary judgment with respect to Flight 175

claims (together, the "Moving Defendants' motions") and pursuant to Fed. R. Civ. Pro. 56(f).

**A. THE MOVING DEFENDANTS' MOTIONS MUST BE DENIED PURSUANT TO FED. R. CIV. PRO. 56(f)**

2.     WTCP Cross-Claim Plaintiffs respectfully request that this Court deny the Moving Defendants' motions pursuant to Fed. R. Civ. P. 56(f) because the WTCP Cross-Claim Plaintiffs have been denied necessary discovery in order to maintain a complete and effective defense to the motions.

3.     Despite numerous requests and meet and confer sessions, each of the Moving Defendants has failed to produce documents responsive to various discovery requests and has failed to produce witnesses for depositions.  Furthermore, all Plaintiffs are awaiting the production of certain documents and information related to the FBI's post-9/11 investigations into the September 11th attacks which, as established below, relate to what the Moving Defendants knew or should have known on September 11th such as the contents of terrorist ringleader Mohammed Atta's checked luggage and the deadly weapons that Atta and his accomplice successfully carried through the Portland security checkpoint..

     i.     US Airways and Colgan Have Failed To Produce Documents and Witnesses Bearing On The Duty and Proximate Cause Issues Raised in US Airways' and Colgan's Motions

4.     Plaintiffs and WTCP Cross-Claim Plaintiffs have jointly met and conferred with US Airways and Colgan on numerous occasions with respect to US Airways' and Colgan's responses and objections to Plaintiffs' Master Discovery (First Set) and Plaintiffs' Master Discovery (Second Set) (hereinafter "First Set" and "Second Set").

5.      On March 19, 2007, Plaintiffs and WTCP Cross-Claim Plaintiffs submitted to the Court their portion of a 2E letter setting forth US Airways' failures to produce documents and information responsive to the First Set and Second Set. *See* March 19, 2007 Letter to Judge Alvin K. Hellerstein, a copy of which is attached hereto as Exhibit 62 (the "US Airways' 2E letter").

6.      The US Airways' 2E letter outlined three categories of documents and information to which Plaintiffs and WTCP Cross-Claim Plaintiffs sought immediate production:  (1) pre-9/11 terrorist threat information communicated to and from US Airways and pre-9/11 information related to system vulnerabilities, (2) US Airways' security procedures, practices, and protocol for intelligence, prescreening, checkpoint screening and checked bag layers of security, and (3) post 9/11 investigations. *See* US Airways' 2E letter, at pp. 3-4 Ex. 62 hereto.

7.      Since the submission of the US Airways' 2E letter, the parties have again met and conferred and are in the process of finalizing Joint Statements of Position as to the First Set and Second Set.  Copies of the most recent drafts of the Joint Statements of Position are attached as Ex. 70 and 71 hereto.

8.      Although US Airways has recently agreed to produce many of the documents responsive to the three categories of information set forth in US Airways' 2E letter, US Airways has not produced and the WTCP Cross-Claim Plaintiffs have not received any of the documents responsive to the three categories to date. *See* Joint Statements of Position, Ex. 70 and 71.

9.     Despite the numerous meet and confer sessions with US Airways/Colgan, the WTCP Cross-Claim Plaintiffs have received a mere **2** documents from Colgan to date.

10.     The documents and information sought by the WTCP Cross-Claim Plaintiffs in the First Set and Second Set, particularly those responsive to the three categories set forth in the US Airways' 2E letter, are necessary to a complete and effective defense of US Airways' and Colgan's motions.

a) Pre-9/11 Terrorist Threat Information And System
   Vulnerabilities Relate To Foreseeability of Risk

11.     As set forth more fully in the accompanying Memorandum of Law at Points I and II, all documents in US Airways'/Colgan's possession reflecting their knowledge of pre-9/11 terrorist threat information and reflecting their knowledge of pre-9/11 system vulnerabilities to terrorism relate to issues of foreseeability and, accordingly, the existence and scope of US Airways'/Colgan's duties to the Cross Claim Plaintiffs on September 11, 2001.

12.     More specifically, documents and testimony concerning what US Airways/Colgan knew or should have known about the potential for multiple, simultaneous and coordinated terrorist attacks on civil aviation (such as the quadruple hijackings in the early 1970s and as the Bojinka plot), relate directly to whether US Airways/Colgan was or should have been aware that suspected terrorists Atta and Omari could have been part of a larger, coordinated terrorist conspiracy to simultaneously attack multiple civilian aircraft or aviation installations. Similarly, documents or testimony reflecting US Airways'/Colgan's knowledge of the rapidly increasing Middle Eastern threat to civil aviation and US Airways'/Colgan's proposed responses to same relate

directly to the "risk reasonably to be perceived" -- and thus guarded against -- by US Airways/Colgan. *See* Memorandum of Law at Points II and III. In addition, documents and testimony related to US Airways'/Colgan's knowledge of the security conditions at Logan Airport -- the airport through which US Airways/Colgan knew that suspected terrorists Atta and Omari would be connecting to another flight -- are also relevant to defining the risk that US Airways/Colgan should have perceived and protected against. *Id.*

13.    Thus, until such time as the WTCP Cross-Claim Plaintiffs are provided with discovery relevant to what US Airways/Colgan did know or should have known about these topics, it would be premature to entertain US Airways'/Colgan summary judgment motion directed to the questions of duty and proximate cause.

### b) US Airways'/Colgan's Internal Security Procedures Relate To Scope of Duty

14.    US Airways'/Colgan's documents establishing their internal security procedures for the various layers and levels of security at issue relate directly to the issues of duty and, therefore, are material and necessary to the defense of the motions.

15.    For instance, the guidance provided to ticket agents, such as Mr. Tuohey, in US Airways'/Colgan's security protocols as to the actions to be taken when confronted with repeated "red flags" that passengers might be terrorists will undoubtedly be probative of whether US Airways/Colgan had a duty to take some steps to notify those at Portland responsible for screening Atta, Omari and their baggage and to notify other potentially impacted airlines and airports (if not the entire civil aviation system as a whole) of an imminent the increased threat of a coordinated multi-pronged series of terrorist attacks on civil aviation arising from the fact that at least two potential terrorists

were entering the civil aviation system that day through the auspices of a US Airways flight.

16.      The facts surrounding Mr. Tuohey's failure to do *anything* in response to his identification of Atta and Omari as terrorists raises many questions regarding US Airways'/Colgan's security procedures.  For instance, what were US Airways'/Colgan's policies and procedures guiding ticket agents to direct private screenings of suspicious passengers and their baggage?  What policies, if any, required US Airways ticket agents to contact the security checkpoints to warn of suspicious persons?  What were US Airways'/Colgan's training procedures and policies regarding interrogating suspicious passengers?  Did US Airways/Colgan require heightened security procedures for selectees on 9/11?  What were US Airways' guidelines for GSCs to implement heightened security procedures?

### c) Post 9/11 Investigations

17.      Because US Airways'/Colgan's duties with regard to Flight 175 are defined by what they knew or should have known generally about the potential for coordinated simultaneous terrorist attacks on multiple airplanes or aviation facilities and by what they knew or should have known about Atta and Omari specifically (*see* Memorandum of Law, at Points II and III), any evaluations by US Airways/Colgan of their actions or inactions on September 11, 2001 in response to that day's threat will be highly probative of both (1) whether US Airways/Colgan were impressed with a duty to take some action designed to eliminate or reduce the threat of such a coordinated attack (including such an attack on Flight 175), and (2) whether those actions or inactions were a proximate cause (*i.e.*, a substantial contributing factor) in the hijacking and resulting

crash of Flight 175. Yet, to date, US Airways/Colgan have failed to fully produce all documentation of their post-9/11 internal investigations.

> ### d) US Airways/Colgan Have Produced Only Two Witnesses For Depositions

18.     The motion should also be denied as premature because US Airways/Colgan have to date produced only *two* witnesses for depositions, Mike Tuohey and US Airways' Ground Security Coordinator James Dillon. Moreover, even as to those two depositions, the WTCP Cross-Claim Plaintiffs were prejudiced in taking them because US Airways failed to produce pre-9/11 terrorist threat information or its training manuals, protocols and rules regarding the witnesses' security responsibilities. Without US Airways' internal documents reflecting its procedures, it was impossible to test the memory and veracity of the witnesses' testimony concerning their recollection of US Airways' security procedures as of September 11th. In short, the WTCP Cross-Claim Plaintiffs were prejudiced by and prevented from establishing the scope of US Airways' security-related obligations on September 11th.[1]

19.     The *only* testimonial evidence that US Airways submits in support of its motion are the affidavits of Charles Severance, the purported Station Manager for US Airways at Portland on September 11th, and Richard Wirth, a US Airways Senior Buyer responsible for security contracts. *See* Affidavit of Charles Severance in Support of US Airways' Motion for Summary Judgment and Affidavit of Richard J. Wirth in Support of US Airways' Motion for Summary Judgment. However, to date, neither of these witnesses have been produced for a deposition. Indeed, Mr. Severence has not been

---

[1] WTCP and PANYNJ Cross-Claim Plaintiffs have reserved the right to correct the depositions of the two witnesses once US Airways complies with its discovery obligations.

produced despite the fact that Plaintiffs (including the WTCP and PANYNJ Cross-Claim

Plaintiffs) listed Mr. Severence as a high priority witness that they wished to depose in

this case. *See* April 11, 2007 Letter from Tim Tomasik to Des Barry, a copy of which is

attached as Exhibit 63 hereto. Colgan similarly submits affidavits of witnesses that have

yet to be produced for depositions. Accordingly, Cross-Claim Plaintiffs cannot

effectively test or counter the alleged "facts" asserted in either US Airways' or Colgan's

affidavits.

20.    Finally, US Airways and Colgan have not produced *any* corporate security

personnel for depositions despite the fact that Plaintiffs and Cross-Claim Plaintiffs have

demanded them. *Id.*

21.    Under these circumstances, where the Cross-Claim Plaintiffs have been

provided only flawed and limited access to US Airways'/Colgan's witnesses

knowledgeable of the relevant facts related to the issues of duty and proximate cause (*i.e.*,

what US Airways/Colgan knew or should have known generally about the threat of

coordinated terrorist attacks in the late Summer of 2001, what US Airways/Colgan knew

or should have known specifically about Atta's and Omari's potential role in such a

coordinated simultaneous attack, and what US Airways'/Colgan's internal rules, policies,

and procedures require when such information is obtained), US Airways'/Colgan's

summary judgment motion is premature and should be denied pursuant to Rule 56(f).

    ii.    Continental's Motion For Summary Judgment Is Premature Where It Has
           Failed to Produce The Basic Documentation Related to Its Role At The
           Single Checkpoint At The Portland Airport

22.    To date, Continental has been served with the First Set and Second Set,

supplemental non-carrier interrogatories, supplemental insurance interrogatories, two sets

of witness interrogatories, and joint interrogatories. *See* Exs. 66, 68, 64, 65, and 69,

*infra.*  To date, the only discovery response that the Cross-Claim Plaintiffs received from Continental was to the First Set.  *See* April 5, 2005 e-mail from Jason Cohen to Douglas Amster, Ex. 81, *infra.*  And as to Continental's responses to the First Set, they objected to the requests in their entirety and produced **no** documents to Plaintiffs or the TSA.

23.    Prior to Continental's filing of its motion for summary judgment, WTCP Cross-Claim Plaintiffs specifically demanded that Continental "get caught up on its discovery obligations."  *Id.*

24.    Clearly, documents and information concerning Continental's responsibility for and relationship with the Portland checkpoint are necessary to defend this motion.

25.    On September 11, 2001, the Portland Airport had a single security checkpoint that all passengers (regardless of which air carrier they were boarding) passed through and where all passengers were screened.  As one of the air carriers operating out of the Portland Airport, Continental had some "shared responsibility" for the operation of that checkpoint.  *See* 8/9/01 "Shared Responsibility Agreement", TSA Delta 00890, Ex. 75 hereto.

26.    However, because Continental has thus far produced **no** documents or witnesses regarding its Portland operations or its responsibilities for the security screenings undertaken at the single security checkpoint at the Portland Airport, neither this Court nor the Cross-Claim Plaintiffs can evaluate whether Continental's responsibilities were such that it could be charged with a duty to identify potential terrorists passing through that checkpoint and to notify potentially impacted aspects of the civil aviation system of an enhanced threat of terrorist activity once such suspected

terrorists and their weapons and highly suspicious items are (or should have been) identified. *See* Memorandum of Law at Point III.

27.    Additionally, in the complete absence of any discovery from Continental, crucial questions defining Continental's duties -- what it did know or should have known concerning potential multiple and simultaneous and coordinated attacks on the civil aviation system and what it did know or should have known about Atta's and Omari's weapons and potential role in such coordinated attacks -- must currently remain unanswered.

28.    Plainly, then, where absolutely no discovery has been had from Continental on the relevant issues, Continental's summary judgment motion is premature and must be denied. *See* Memorandum of Law, at Point II.B.

      iii.    WTCP and PANYNJ Cross-Claim Plaintiffs Are Waiting For Production of Documents and Items From The FBI Concerning Its Post-September 11th Investigations

29.    The United States, a party to this action, has recently agreed to produce documents responsive to the Plaintiffs' requests to the FBI concerning its post-September 11t investigations into the attacks.  *See* Exhibits 89 and 90 hereto.

30.    Beyond the foregoing, all the Moving Defendants' motions are clearly premature given that the United States has agreed to produce documents and information which the WTCP and PANYNJ Cross-Claim Plaintiffs believe will demonstrate that a proper search of Atta's checked baggage would have revealed a treasure trove of specific threat information, **not the least of which was documentation revealing the specific identities of the Flight 175 hijackers and detailing their operational plans.**

## EXHIBITS TO THIS MOTION

31.     Attached as Exhibit 1 hereto is a true and correct copy of US Airways' Air Carrier Standard Security Program US000879 through US001179.

32.     Attached as Exhibit 2 hereto is a true and correct copy of the September 17, 1999 Code Share Agreement Between US Airways, Inc. and Colgan Air Inc., COL000006 through COL000055.

33.     Attached as Exhibit 3 hereto is a true and correct copy of the February 12, 1997 General Terms Agreement for Pre-Departure Screening, Skycap and Other Services between USAir, Inc. and Globe Aviation Services Corporation, US000350 through US000380.

34.     Attached as Exhibit 4 hereto is a true and correct copy of a news article by Jerry Harways, *Encounter Haunts Ex-Ticket Agent*, Portland Press Herald, Sept. 11, 2006, XC093270 through XC093272.

35.     Attached as Exhibit 5 hereto is a true and correct copy of the Transcript of the Nov. 1, 2006 Deposition of Michael Tuohey.

36.     Attached as Exhibit 6 hereto is a true and correct copy of the *9/11 Commission Staff Monograph on the Four Flights and Civil Aviation Security,* (Sept. 12, 2005).

37.     Attached as Exhibit 7 hereto is a true and correct copy of a magazine article by Mel Allen, *The Maine Connection*, Yankee Magazine, September 2006.

38.     Attached as Exhibit 8 hereto is a true and correct copy of the relevant portions of *The 9/11 Commission Report*, XC002058, XC002059, XC002519.

39.    Attached as Exhibit 9 hereto is a true and correct copy of the Transcript of the Feb. 16, 2007 Deposition of Doreen Carbone.

40.    Attached as Exhibit 10 hereto is a true and correct copy of Greg Szymanski, *New Questions About Real Identity of 9/11 Hijackers*, AmericanFreePress.Net, Mar. 21, 2005, XC093257 through XC093260.

41.    Attached as Exhibit 11 hereto is a true and correct copy of the Federal Bureau of Investigation Interview of Michael F. Tuohey, US-001569 through US-001578 (Sept. 12, 2001).

42.    Attached as Exhibit 12 hereto is a true and correct copy of a Michael Tuohey Interview with the Kean Commission, US-001556 through US-001568.

43.    Attached as Exhibit 13 hereto is a true and correct copy of the Airport Security Program for Portland International Jetport, COP000001 through COP000104.

44.    Attached as Exhibit 14 hereto is a true and correct copy of a news article by David Hench, *Ticket Agent Haunted by Brush with 9/11 Hijackers*, Portland Press Herald, Mar. 6, 2005.

45.    Attached as Exhibit 15 hereto is a true and correct copy of a news article by Michael Smerconish, *He Looked Terror In The Eye And Blinked*, www.mastalk.com Feb. 24, 2005, XC093254 through XC093256.

46.    Attached as Exhibit 16 hereto is a true and correct copy of the Transcript from the September 12, 2005 Oprah Winfrey Show, XC058696 through XC058704.

47.    Attached as Exhibit 17 hereto is a true and correct copy of the Transcript from the January 18, 2005 "Paula Zahn Now" show, XC051737 through XC051740.

48.     Attached as Exhibit 18 hereto is a true and correct copy of the Transcript of the November 2, 2006 Deposition of Jim Dillon.

49.     Attached as Exhibit 19 hereto is a true and correct copy of the Transcript of the Jan. 19, 2007 Deposition of Paul Burrows.

50.     Attached as Exhibit 20 hereto is a true and correct copy of a news article by Cindy Adams and John Lehmann, *Final Hours of Hijack Monster-He Waited Until Last Minute to Buy Boxcutters*, New York Post (Oct. 12, 2001), XC0104358 through XC0104363.

51.     Attached as Exhibit 21 hereto is a true and correct copy of the Transcript of the January 19, 2007 Deposition of Anthony Genovese.

52.     Attached as Exhibit 22 hereto is a true and correct copy of the Transcript of the January 18, 2007 Deposition of Barbara Foster.

53.     Attached as Exhibit 23 hereto is a true and correct copy of the *U.S. v. Moussaoui* Trial, Government Exhibits FO07021-4 (stills from a security camera at the Portland International Jetport security checkpoint on September 11, 2001).

54.     Attached as Exhibit 24 hereto is a true and correct copy of a news article by Matthew Brelis and Matt Carroll, *FAA Finds Logan Security Among Worst In US*, Boston Globe, Sept. 26, 2001, XC088408 through XC088413.

55.     Attached as Exhibit 25 hereto is a true and correct copy of US Airways' Checkpoint Operations Guide, US-001180 through US-001298.

56.     Attached as Exhibit 26 hereto is a true and correct copy of the *U.S. v. Moussauoi* Trial Transcript, Testimony of James M. Fitzgerald (Mar. 7, 2006), XC052730 through XC052853.

57.    Attached as Exhibit 27 hereto is a true and correct copy of a news article by Curtis Morgan, David Kidwell & Oscar Corral, *Prelude to Terror: State a natural for training, blending into communities*, The Miami Herald, Sept. 21, 2001, XC060997 through XC061004.

58.    Attached as Exhibit 28 hereto is a true and correct copy of the relevant portions of the *9/11 Commission Staff Statement Nos. 4, 8 and 16*.

59.    Attached as Exhibit 29 hereto is a true and correct copy of the Massport Airport Security Program (Sept. 18, 1999), MP100399 through MP100638.

60.    Attached as Exhibit 30 hereto is a true and correct copy of the Government Accountability Report, *Aviation Security: Additional Actions Needed to Meet Domestic and International Challenges*, XC001707 through XC001765 (Jan. 27, 1994).

61.    Attached as Exhibit 31 hereto is a true and correct copy of the *9/11 and Terrorist Travel: Staff Report of National Commission on Terrorist Attacks Upon the United States*, XC009230 through XC009470.

62.    Attached as Exhibit 32 hereto is a true and correct copy of a book by Peter St. John, *Air Piracy, Airport Security and International Terrorism: Winning the War Against Hijackers 24* (Quorum Books) (1991), XC091544 through XC091575.

63.    Attached as Exhibit 33 hereto is a true and correct copy of a report by the *Joint Inquiry into Intelligence Community Activities Before and After the Terrorist Attacks of September 11, 2001* (Dec. 20, 2002), XC050737 through XC050747.

64.    Attached as Exhibit 34 hereto is a true and correct copy of the Federal Aviation Administration's ("FAA") U.S. Dep't of Transportation, *Changing Face of Transportation*, XC026896 through XC02904.

65.    Attached as Exhibit 35 hereto is a true and correct copy of the *U.S. v. Moussaoui* Trial Tr., Testimony of Robert J. Cammaroto, TSA Chief of Commercial Airport Policy (Mar. 22, 2006), XC053564 through XC053623.

66.    Attached as Exhibit 36 hereto is a true and correct copy of a report by the DOT/FAA, *Criminal Acts Against Civil Aviation* (1996), XC026807 through XC026895.

67.    Attached as Exhibit 37 hereto is a true and correct copy of the U.S. Dep't of Transportation/Federal Aviation Administration ("DOT/FAA"), *Security Directive: Threat to Air Carriers* (May 8, 1997).

68.    Attached as Exhibit 38 hereto is a true and correct copy of the DOT/FAA, *Security Directive: Threat to Air Carriers* (Oct. 27, 1997), XC059832 through XC059841.

69.    Attached as Exhibit 39 hereto is a true and correct copy of trial testimony in *U.S. v. Moussaoui* transcribing verbatim the ABC News John Miller interview with Osama bin Laden, XC052672 through XC052679 (Jun. 10, 1998).

70.    Attached as Exhibit 40 hereto is a true and correct copy of the DOT/FAA, *Civil Aviation Security Information Circular* (Dec. 14, 1998), AAL011887 through AAL011888.

71.    Attached as Exhibit 41 hereto is a true and correct copy of the DOT/FAA, *Criminal Acts Against Civil Aviation* (1999), XC043566 through XC043645.

72.    Attached as Exhibit 42 hereto is a true and correct copy of DOT/FAA, *Civil Aviation Security Information Circular*, (Feb. 28, 1997), AAL011872 through AAL011873.

73.    Attached as Exhibit 43 hereto is a true and correct copy of a report by the DOT, *Transportation Security and Terrorism Review: USA v. Usama bin Laden*, AAL021009 through AAL021017.

74.    Attached as Exhibit 44 hereto is a true and correct copy of the DOT's, *Civil Aviation Security Information Circular*, AAL011917 through AAL011919, (Apr. 27. 2000).

75.    Attached as Exhibit 45 hereto is a true and correct copy of the FAA's *Criminal Acts Against Civil Aviation Year 2000 Review, AA Flight Training*, AAL017080 through AAL017160.

76.    Attached as Exhibit 46 hereto is a true and correct copy of an FAA *Memorandum: Worldwide Threat Questions and Answers*, TSAUAL00000705 through TSAUAL00000736.

77.    Attached as Exhibit 47 hereto is a true and correct copy of United Airlines, *Security Instructor Guide (2000)*, UAL001905 through UAL001919.

78.    Attached as Exhibit 48 hereto is a true and correct copy of a report by the DOT/FAA, *Terrorist Threat Overview for the United States*, AAL021018 through AAL021027.

79.    Attached as Exhibit 49 hereto is a true and correct copy of the Civil Aviation Security Intelligence PowerPoint Presentation: the Trans-National Threat to Civil Aviation, 1000542 through 1000559.

80.    Attached as Exhibit 50 hereto is a true and correct copy of 14 C.F.R. Part 107, 10866 Fed. Reg. 37351-52 (July 17, 2001).

81.    Attached as Exhibit 51 hereto is a true and correct copy of the Transcript of the March 30, 2007 Deposition of Joseph Lawless.

82.    Attached as Exhibit 52 hereto is a true and correct copy of the Transcript of the September 25-26, 2006 Deposition of Timothy Ahern.

83.    Attached as Exhibit 53 hereto is a true and correct copy of the Transcript of the September 18-19, 2006 Deposition of Edmond Soliday.

84.    Attached as Exhibit 54 hereto is a true and correct copy of the DOT/FAA, *Civil Aviation Security Information Circular*, (Jul. 31, 2001), US-001381 through US-001383.

85.    Attached as Exhibit 55 hereto is a true and correct copy of the *Civil Aviation Security Information Circular* (Jul. 18, 2001), AAL011970 through AAL011971.

86.    Attached as Exhibit 56 hereto is a true and correct copy of the Massport Public Safety Minutes (Sept. 5, 2001), MP100853 through MP100867.

87.    Attached as Exhibit 57 hereto is a true and correct copy of the April 6, 2000 General Accounting Office Report: *"Aviation Security: Vulnerabilities Still Exist in the Aviation Security System."*

88.    Attached as Exhibit 58 hereto is a true and correct copy of a news article by Mathew Brelis, *Security Lapses Revealed at Logan: Federal Agents Report at Least 136 Violations*, Boston Globe, Sept. 19, 1999, XC088355 through XC088359.

89.    Attached as Exhibit 59 hereto is a true and correct copy of a news article by Matt Carroll, *Airlines Foiled Police Logan Probe*, Boston Globe, Oct.17, 2001, XC0088373 through XC088376.

90.    Attached as Exhibit 60 hereto is a true and correct copy of a news article by William F. Jasper, *Unfriendly Skies*, New American, Oct. 18, 2004, XC087812 through XC087819.

91.    Attached as Exhibit 61 hereto is a true and correct copy of the April 13, 2001 Massport Public Safety Meeting Minutes, MP100789 through MP100792.

92.    Attached as Exhibit 62 hereto is a true and correct copy of a March 19, 2007 letter from Plaintiffs and WTCP Cross-Claim Plaintiffs to Honorable Alvin K. Hellerstein and Exhibits A and B thereto.

93.    Attached as Exhibit 63 hereto is a true and correct copy of an April 11, 2007 letter from Timothy S. Tomasik, Coordinated Plaintiffs' Liaison Counsel to Desmond T. Barry, Aviation Defendants' Liaison Counsel.

94.    Attached as Exhibit 64 hereto is a true and correct copy of the Supplemental First Set of Witness Information Interrogatories to Aviation Defendants.

95.    Attached as Exhibit 65 hereto is a true and correct copy of the Supplemental Second Set of Witness Information Interrogatories to Aviation Defendants.

96.    Attached as Exhibit 66 hereto is a true and correct copy of the Supplemental Interrogatories and Requests for Production of Documents to "Non-Carrier" Aviation Defendants.

97.    Attached as Exhibit 67 hereto is a true and correct copy of the Plaintiffs' Joint Master Discovery (Second Set) Airline and Security Company Defendants.

98.    Attached as Exhibit 68 hereto is a true and correct copy of the Supplemental Interrogatories and Requests for Production of Documents Regarding Insurance.

99.    Attached as Exhibit 69 hereto is a true and correct copy of the Joint Interrogatories.

100.    Attached as Exhibit 70 hereto is a true and correct copy of the Draft Joint Statement of Position Regarding Plaintiffs' Master Discovery (First Set).

101.    Attached as Exhibit 71 hereto is a true and correct copy of the Draft Joint Statement of Position Regarding Plaintiffs' Master Discovery (Second Set).

102.    Attached as Exhibit 72 hereto is a true and correct copy of the March 22, 2007 Conference Transcript.

103.    Attached as Exhibit 73 hereto is a true and correct copy of the July 17, 2006 letter from Richard Campbell to Robert Clifford re: In Re September 11th Litigation.

104.    Attached as Exhibit 74 hereto is a true and correct copy of the Response of Defendant Continental Airlines, Inc. to Plaintiffs' Master Discovery Request (First Set).

105.    Attached as Exhibit 75 hereto is a true and correct copy of the August 9, 2001, Shared Responsibility Agreement-PWM, TSADELTA00890.

106.    Attached as Exhibit 76 hereto is a true and correct copy of the *U.S. v. Moussaoui* Prosecution Trial Exhibit; *Hijackers' True Name Usage 2001*.

107.    Attached as Exhibit 77 hereto is a true and correct copy of the *U.S. v. Moussaoui* Prosecution Trial Exhibit; *Hijackers' Purchase or Possession of Knives Business Record Chart*, Government Exhibit OG00015.

108. Attached as Exhibit 78 hereto is a true and correct copy of the March 1, 2007 Transcript of the Deposition of Nydia Gonzalez.

109. Attached as Exhibit 79 hereto is a true and correct copy of still photos from *U.S. v. Moussauoi* Trial Exhibit NT0211.

110. Attached as Exhibit 80 hereto is a true and correct copy of the Colgan Air Checkpoint Operations Guide, COL000056 through COL000197.

111. Attached as Exhibit 81 hereto is a true and correct copy of an April 5, 2007 e-mail from Jason T. Cohen to Douglas H. Amster.

112. Attached as Exhibit 82 hereto is a true and correct copy of the Transcript of the Apr. 19, 2007 Deposition of William Bourque.

113. Attached as Exhibit 83 hereto is a true and correct copy of the Plaintiffs' Master Discovery (First Set)in  21 MC 97 (AKH), dated January 24, 2003.

114. Attached as Exhibit 84 hereto is a true and correct copy of the Transcript of the January 18, 2007 Deposition of Michael Johns.

115. Attached as Exhibit 85 hereto is a true and correct copy of an uncertified transcript of the May 6, 2001 Fox 25 (Boston) Investigative Report, *"Getting Past Airport Security"*.

116. Attached as Exhibit 86 hereto is a true and correct copy of a news article, *'Oh God, Open All Doors for Me'; Excerpts from a five-page handwritten document that the FBI found in Mohamed Atta's luggage. Translated from Arabic*, Washington Post, Sept. 28, 2001.

117. Attached collectively as Exhibit 87 hereto is a true and correct copy of 14 CFR § 108.1-.5; 108.11; 108.33 (2001).

118.    Attached as Exhibit 88 hereto is a true and correct copy of a news article by Michael Dorman, *An untold story of 9/11*, Newsday, Apr. 17, 2006.

119.    Attached as Exhibit 89 hereto is a true and correct copy of an April 13, 2007 letter from Douglas J. Pepe to Sarah S. Normand with Appendices A and B.

120.    Attached as Exhibit 90 hereto is a true and correct copy of an April 16, 2007 e-mail from Jason T. Cohen to Sarah Normand.

121.    For the reasons set forth above and in the exhibits annexed hereto, the accompanying Local Rule 56.1 statement, and the accompanying Memorandum of Law, the WTCP Cross-claim Plaintiffs respectfully request that this Court deny the Moving Defendants' motions in their entirety.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Dated: April 27, 2007

RICHARD A. WILLIAMSON